UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEQUARIUS D. FITZPATRICK,
    Plaintiff,

v.                                                                    Case No. 21-C-1131

DREW WEYCKER and
ALEXANDER BONIS,
    Defendants.

## ORDER

Plaintiff Dequarius D. Fitzpatrick is proceeding on Eighth Amendment claims alleging that officials at Green Bay Correctional Institution (GBCI) were deliberately indifferent to his risk of suicide. The parties filed cross-motions for summary judgment. ECF Nos. 15, 19. Both motions are fully briefed and ready for my decision.

### I. BACKGROUND[1]

The plaintiff was an inmate at GBCI during all relevant times. ECF No. 17, ¶ 1. Sergeant Drew Weycker and Correctional Officer Alex Bonis worked at GBCI. *Id.* I allowed the plaintiff to proceed on Eighth Amendment claims alleging that on June 29, 2021, the defendants ignored the plaintiff's threats to kill himself with a rubber pencil, and the plaintiff cut his arm with the pencil. *Id.*; ECF No. 8 at 5–6.

---

[1] Facts in this section are taken from the parties' proposed findings of fact, declarations in support of their motions for summary judgment, and their responses to the other side's facts. ECF Nos. 17–18, 21–22, 24–26. I consider admitted any facts that the opposing party does not properly contest. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider the proposed facts only where the cited evidence supports them, *see* Fed. R. Civ. P. 56(c)(1); Civil L. R. 56(b)(1)(C)(i) and (2)(B)(i)–(ii), and will consider arguments in the memoranda only to the extent they properly refer to the proposed facts, *see* Civil L. R. 56(b)(6).

Early on that day, Officer Bonis was working in the Restricted Housing Unit (RHU). ECF No. 17, ¶ 2. The plaintiff was on observation status, and Bonis routinely checked on him. *Id.*, ¶ 3. Observation status is a nonpunitive status used to ensure the safety of an inmate or others. ECF No. 21, ¶ 8. Inmates on observation status have no property, are given a mattress and a gown or smock, and are monitored every fifteen minutes. *Id.*, ¶ 6.

**A. The Plaintiff's Version of Events**

The plaintiff provides his version of the facts through a signed declaration sworn "under penalty of perjury." ECF No. 22. The plaintiff avers he is mentally ill, suffers from major depressive disorder, has been in the RHU since March 2021, and was placed on observation status on June 28, 2021, for attempting suicide by "cutting [his] left arm open." *Id.*, ¶¶ 2–4. He says Weycker was the first officer to find the plaintiff with the rubber pencil. *Id.*, ¶ 5. Weycker told him an associate from the Psychological Services Unit advised that "a little cutting on observation is to be expected." *Id.*, ¶ 6. The plaintiff told Weycker he was having suicidal thoughts and would use the rubber pencil to "do a lot of cutting" if Weycker left. *Id.* He showed Weycker the pencil and told him, "This what I got. I'm suicidal and if you leave, this what I'm gone cut myself with." *Id.* Weycker walked away from the cell and left the plaintiff unsupervised. *Id.* The camera in his observation cell was covered. *Id.*

Bonis appeared moments later, and the plaintiff showed him the pencil and said he would "start harming [him]self with this." *Id.*, ¶¶ 7–8. Bonis told the plaintiff to "[h]and it out." *Id.*, ¶ 8. The plaintiff insists Bonis knew the plaintiff could harm himself with the rubber pencil, and that is why he asked the plaintiff to give it to him. *Id.*; ECF No. 26, ¶ 5. The plaintiff refused to give the pencil to Bonis, who walked away, again leaving the

plaintiff unsupervised. ECF No. 22, ¶ 8. The plaintiff then ripped the bandage off his left arm and stuck "the sharpened rubber pencil into the existing wound in an attempt to exsanguinate." *Id.*, ¶ 9. The wound bled "profusely." *Id.*

Bonis again checked on the plaintiff about twenty minutes later, saw the plaintiff's wound, and called for Weycker to come to the plaintiff's cell. *Id.*, ¶ 10. Weycker reappeared and saw the plaintiff's wound, and he and Bonis retrieved "a large bath towel" to cover the plaintiff's wound and stop the bleeding. *Id.* The defendants then escorted the plaintiff to the RHU Treatment Room. *Id.*

The plaintiff asserts that inmates on observation status are not supposed to have rubber pencils. ECF No. 21, ¶ 7. In support, he attached a request he sent to the Psychological Services Unit on October 19, 2021, asking if an inmate may "possess a rubber pencil while on observation." ECF No. 22-1 at 11. An associate from that unit responded, "No." *Id.* The defendants do not dispute that inmates on observation are not allowed to have a rubber pencil and that they knew the plaintiff was not allowed to have one. ECF No. 24, ¶ 7.

**B. The Defendants' Version of Events**

Bonis did not file a declaration providing his version of the events. He relies instead on his sworn responses to the plaintiff's interrogatories. ECF No. 17, ¶¶ 2–7 (citing ECF No. 18-3 at 3–4). In those responses, Bonis says he does not recall the exact conversation he had with the plaintiff. ECF No. 18-3 at 3, ¶ 2. However, he does recall the plaintiff telling him that "he was suicidal and that he intended to kill himself with a rubber pencil." *Id.* Bonis says he did not believe the threat was credible "because a rubber pencil cannot cause that type of harm." *Id.* Bonis told the plaintiff to give him the rubber

3
Case 2:21-cv-01131-LA   Filed 05/27/22   Page 3 of 12   Document 30

pencil, but the plaintiff refused to do so. *Id.*, ¶¶ 3–4. Bonis notified Sergeant Weycker and Captain Cushing (not a defendant) about the incident. *Id.*, ¶ 4. Bonis' understanding was "that the state switched from pen inserts to rubber pencils so inmates could not self-harm with them." *Id.* He says he "d[id] not reasonably believe that a rubber pencil could cause significant self-harm." *Id.*

Like Bonis, Weycker did not file a sworn declaration detailing his version of the events and relies on his responses to the plaintiff's interrogatories. ECF No. 17, ¶¶ 7–9 (citing ECF No. 18-3 at 1–2). Weycker avers Bonis told him the plaintiff had a rubber pencil in his cell and was threatening to harm himself. ECF No. 18-3, ¶ 1. He acknowledges that the plaintiff was not supposed to have the pencil. *Id.*, ¶ 3. Weycker reported to the plaintiff's cell, where the plaintiff told Weycker "that he was going to continue to harm himself with the rubber pencil and stated he was having suicidal thoughts." *Id.*, ¶ 4. Weycker avers that his supervisor told him to expect the plaintiff would engage in "continued self-harm" while on observation status and he should "document what was happening." *Id.*, ¶ 5. He says his supervisor told him to leave the plaintiff's cell despite being "aware that Plaintiff was in possession of a rubber pencil." *Id.*, ¶ 6.

The defendants assert that Weycker documented the incident in the plaintiff's observation log, as Captain Cushing instructed him to do. ECF No. 17, ¶ 9 (citing ECF No. 18-3 at 3). The cited evidence (Bonis' responses to the plaintiff's interrogatories) does not support that statement. The plaintiff disputes that Weycker documented the incident. ECF No. 26, ¶ 9. He cites a document entitled "Observation of Inmate." ECF No. 22-1 at 3. This document notes that the plaintiff was on clinical observation for over fifty-six hours,

4
Case 2:21-cv-01131-LA   Filed 05/27/22   Page 4 of 12   Document 30

from early on June 28, 2021, through mid-morning on June 30, 2021, because he "[m]ade cut to ankle." *Id.* The document does not note the June 29, 2021 incident.

According to the defendants, Captain Cushing called the Health Service Unit to report the incident, and Nurse Steven Bost (not a defendant) responded to the RHU to treat the plaintiff. ECF No. 17, ¶ 10. The plaintiff told Bost that he had reopened an old wound on his left arm. *Id.*, ¶ 11; ECF No. 18-1 at 3. Bost noted in the progress notes from the incident that he found a half-centimeter laceration on the plaintiff's arm "over old scar tissue," did not see any active bleeding, and found a "mild am[oun]t dried blood to elbow and forearm area." ECF No. 18-1 at 3. Bost cleaned and treated the wound and closed it with "steri-strips." *Id.*[2] He covered the wound with a 2x2-inch gauze pad and tape. *Id.* Bost advised the plaintiff to keep the site clean and dry and notify the Health Services Unit of any signs of infection. *Id.*

Later that day, the plaintiff spoke with Dr. Alleah Pynenberg (not a defendant) at his cell for a mental-health observation. ECF No. 18-2 at 3. He reported that "he was doing 'wonderful' and was ready to come off observation" status. *Id.* Dr. Pynenberg asked the plaintiff about his earlier self-harm, but the plaintiff denied engaging in self-harm. *Id.* The doctor informed him that Captain Cushing notified her office about his self-harm, but the plaintiff "continued to deny it was him." *Id.* Dr. Pynenberg recommended the plaintiff remain on observation status due to the report of his earlier self-harm. *Id.* She described the encounter as the plaintiff's "attempt to be removed from observation and not indicative

---

[2] Steri-strips are "butterfly-shaped wound closure bandages." *McCaa v. Baumann*, No. 20-CV-30, 2021 WL 961691, at *4 (E.D. Wis. Mar. 15, 2021).

of his overall cognitive functioning." *Id.* The plaintiff denies telling Dr. Pynenberg that he had not harmed himself. ECF No. 26, ¶ 15.

Dr. Pynenberg also noted that the plaintiff was initially placed on observation after demanding a new mattress and covering his cell front before showing a rubber pencil and threatening "Round 2." ECF No. 18-2 at 3. She noted that the plaintiff "reportedly" harmed himself on June 29, 2021 "due to wanting a blanket. *Id.*

## II. ANALYSIS

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Neither argument nor speculation is enough to defeat summary judgment. *See Ammerman v. Singleton*, 817 F. App'x 265, 268 (7th Cir. 2020) (citing *Herzog v. Graphic Packaging Intl, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014)). To survive a motion for summary judgment, the non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## B. Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment "reaches . . . deliberate indifference to the serious medical needs of prisoners." *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019). To succeed on "ordinary medical care cases under the Eighth Amendment," a plaintiff must establish that (1) they "suffered from an objectively serious medical condition" and (2) "the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)). For the first prong, it is well established that a genuine risk of suicide is an objectively serious medical condition. *See id.*; *Lord v. Beahm*, 952 F.3d 902, 904–05 (7th Cir. 2020); *Boncher ex rel. Boncher v. Brown County*, 272 F.3d 484, 488 (7th Cir. 2001).

As for the second prong, when the objectively serious medical condition is a genuine risk of suicide, the plaintiff must establish "that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). To meet the first half of this prong, "the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Id.* The second half of the prong is met by establishing "that an individual defendant intentionally disregarded the known risk to inmate health or safety." *Id.* at 762.

## C. Discussion

### 1. Objectively Serious Medical Condition

There is a genuine dispute as to whether the plaintiff suffered from an objectively serious medical condition. To start, it is undisputed that the plaintiff, who is mentally ill,

was on observation status for previously attempting suicide by cutting his left arm, possessed a rubber pencil, showed the defendants the pencil, told the defendants that he was having suicidal thoughts and intended to cut himself with the pencil, and, in fact, used the pencil to cut himself. However, the parties dispute the extent of the plaintiff's injury and treatment. *See Daniels v. Klemmer*, 404 F. Supp. 3d 1223, 1230 (E.D. Wis. 2019) ("The nature of the harm the plaintiff ended up inflicting on himself may *inform* [the objective] inquiry, but it should not be the only factor.").

The defendants contend that the plaintiff's injury, which all parties agree was five millimeters long, was trivial. The defendants dispute the plaintiff's assertion that his wound bled "profusely." ECF No. 24, ¶ 19. The defendants cite Nurse Bost's progress notes, which reported no active bleeding from the plaintiff's wound and a "mild" amount of dried blood to his elbow and forearm. ECF No. 18-1 at 3. But they do not dispute the plaintiff's statement that they covered his injured arm "with a large bath towel to stop it from bleeding" before Nurse Bost arrived. *Id.*, ¶ 22. If the plaintiff's wound was small and barely bleeding, as the defendants maintain, then a large bath towel would not be needed to cover the wound and stop the bleeding before the nurse arrived to treat it. Perhaps the defendants reached for the nearest item, and the only towel available was larger than needed to cover the plaintiff's cut. But neither defendant filed a declaration explaining this inconsistency. The defendants attempt to bolster their claim that the plaintiff's injury was trivial by asserting that the 2x2-inch gauze pad used to cover the wound "is essentially a band-aid." ECF No. 16 at 4. However, a two-inch square bandage is different in shape and larger in size than an average band-aid, and Nurse Bost's progress notes indicate that steri-strips were also applied. ECF No. 24, ¶ 23.

The parties' differing accounts of the plaintiff's injury and treatment create a genuine dispute of material fact as to whether the cut caused only minor bleeding and required conservative treatment or required pretreatment with a large bath towel to stop the bleeding before a nurse could arrive to clean and dress the wound. A reasonable jury could believe it was the latter and conclude that, when combined with the other circumstances surrounding the threat, the plaintiff suffered from an objectively serious medical condition—i.e., a genuine risk of suicide and self-harm. That distinguishes this case from *Lord*, in which the Seventh Circuit affirmed the district court's grant of summary judgment against an inmate who voiced an insincere suicide threat and only inflicted "trivial—indeed, almost nonexistent" "injuries consist[ing] only of minor scratches, quickly and easily treated with a gauze bandage." *Lord*, 952 F.3d at 905.

**2. Deliberate Indifference**

There is also a genuine dispute as to whether the defendants subjectively knew the prisoner was at substantial risk of committing suicide. It is undisputed that the defendants knew the plaintiff had threatened to harm himself with a rubber pencil in his possession. It is also undisputed that the defendants walked away from the plaintiff's cell and left him unsupervised after becoming aware of those facts. However, the parties dispute whether the defendants knew rubber pencils could be used to self-harm. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("Prison officials charged with deliberate indifference might show . . . that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.").

Bonis averred in response to the plaintiff's interrogatories that he did not believe the plaintiff could significantly harm himself with a rubber pencil. However, it is undisputed

9

that Bonis also told the plaintiff to "[h]and it out" because he knew inmates on observation were not allowed to possess rubber pencils. ECF No. 24, ¶ 17. From that statement and knowledge, a reasonable jury could disbelieve Bonis' interrogatory response and infer that he knew rubber pencils could be used by the plaintiff to self-harm.

As for Weycker, although it is possible he also believed that the plaintiff could not significantly harm himself with the pencil, there is no evidence showing that was his belief. Unlike Bonis' responses, Weycker's interrogatory responses do not indicate whether he subjectively believed rubber pencils could be used to self-harm. A reasonable jury could conclude that Weycker knew there was a serious risk that the plaintiff would harm himself with the pencil because he was on observation status for harming himself previously and was actively threatening suicide. I therefore concluded that neither party is entitled to summary judgment on this record.

### 3. Qualified Immunity

The defendants alternatively assert that, even if they are not entitled to summary judgment, they are entitled to qualified immunity. ECF No. 16 at 6–8. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)). Qualified immunity is an affirmative defense. To determine whether the defendants are entitled to qualified immunity, I must consider 1) whether the defendants violated a constitutional right and 2) whether the right at issue was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232.

The defendants assert that there is no clear precedent showing their failure to intervene and prevent the plaintiff from cutting himself constituted deliberate indifference. They contend that similar cases in this circuit "demonstrate that it is at best *un*clear whether Defendants could be held liable." ECF No. 16 at 7–8 (citing *Lord* and *Johnson v. Garant*, 786 F. App'x 609, 610 (7th Cir. 2019)). They assert that, because the issue is close, they are entitled to qualified immunity as a matter of law. *Id.* at 8 (citing *White v. Stanley*, 745 F.3d 237, 241 (7th Cir. 2014)).[3]

The issues in this case are close only if one looks at the defendant's version of the events. But for purposes of qualified immunity, I must view the evidence in the light most favorable to *the plaintiff* because he is the nonmoving party. *See Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). Viewed in the plaintiff's favor, the evidence shows the plaintiff is mentally ill, suffers from major depressive disorder, and has a history of self-harming. He was placed on observation status because he attempted to commit suicide by cutting his left arm. While on observation status, the plaintiff possessed and showed the defendants a rubber pencil, told them he was suicidal, and threatened to harm himself if the defendants left. The defendants knew the plaintiff was not supposed to have the rubber pencil and understood his threats, but they left his cell without acting to prevent him from harming himself. This evidence reasonably allows the conclusion that the

---

[3] The portion of the plaintiff's brief responding to the defendants' qualified-immunity analysis (ECF No. 25 at 3–4, Section I.C) clearly was lifted, almost verbatim, from the decision of another court in this district in *McCaa v. Baumann*, 2021 WL 961691, at *5. The plaintiff does not cite *McCaa* or credit Magistrate Judge Joseph for her qualified-immunity analysis that he copies. "Plagiarizing is prohibited in legal documents and pleadings." *Atwater v. Menne*, No. 21-CV-225-PP, 2021 WL 2982121, at *2 (E.D. Wis. July 15, 2021). I caution the plaintiff against this practice and advise him to credit quotations he uses in the future by citing their source.

defendants were aware at the time of a substantial risk that the plaintiff would harm himself or attempt suicide with the rubber pencil, but they disregarded that risk and left the plaintiff unattended.

That leaves the question whether the plaintiff's right to be free from the defendants' deliberate indifference to his risk of suicide was clearly established in 2021, when these events occurred. The Seventh Circuit recently noted that "it is well established that inmates have the right to be free from deliberate indifference to this risk [of suicide] while in custody." *Lisle*, 933 F.3d at 716 (citing cases showing this right was clearly established as early as 1998). I therefore find that, viewing the evidence in the plaintiff's favor, the defendants are not entitled to qualified immunity at this point.[4]

### III. CONCLUSION

For the reasons described above, **IT IS ORDERED** that the parties' motions for summary judgment (ECF Nos. 15, 19) are **DENIED**.

I will issue a separate order scheduling a status conference to discuss the next steps in this case.

Dated at Milwaukee, Wisconsin this 27th day of May, 2022.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge

---

[4] The defendants also ask me, in effect, to impose a strike against the plaintiff under 28 U.S.C. § 1915(g) for filing a "frivolous and meritless" lawsuit. ECF No. 27 at 3. Because I am denying the defendants' motion for summary judgment and will not dismiss the case at this time, that request is moot.